RENDERED: JUNE 24, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0269-MR

STEPHON NEWCOMB          APPELLANT

v.          APPEAL FROM SCOTT CIRCUIT COURT
HONORABLE BRIAN K. PRIVETT, JUDGE
ACTION NO. 07-CR-00084

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: LAMBERT, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Stephon Newcomb brings this appeal from a January 30, 2020, Opinion of the Scott Circuit Court denying his Kentucky Rules of Criminal Procedure (RCr) 11.42 motion after an evidentiary hearing. We affirm.

The underlying facts have been set forth by the Kentucky Supreme Court in *Newcomb v. Commonwealth*, 410 S.W.3d 63 (Ky. 2013), as follows:

The charges against Newcomb involved the rape of two female victims, Karen and Jennifer [pseudonyms]. . . .

The first alleged victim, Karen, was 17 years old at the time of the offense. She and Newcomb both worked at Burger King[.] . . .

On the day of the alleged rape, Newcomb and Karen were working the drive-through at Burger King. Upon receiving permission from her mother, Karen agreed to drive Newcomb home after work because he needed a ride. . . . Newcomb told Karen to drive past his house because he needed to talk with her.

Newcomb directed Karen to a deserted parking lot, where she stopped the car. When Karen put the car in park, Newcomb removed the keys from the ignition, leaned toward Karen, and began kissing her neck. Karen told Newcomb that he had the wrong idea and told him to stop. Newcomb then started to remove his pants, and Karen pushed him away, telling him that they were not going to have sex. Newcomb moved back into the passenger side of the car and said that he could not believe Karen was doing this. When Karen demanded the car keys, Newcomb grabbed her hair and pulled her on top of him. While holding Karen by the hair, Newcomb pulled down her pants and raped her.

. . . .

The second alleged victim, Jennifer, was 20 years old at the time. Jennifer knew Newcomb because they lived in the same neighborhood. Newcomb dropped by Jennifer's house occasionally to visit her and her brother, and she and Newcomb were friendly. . . .

On a day that was about ten-days after the alleged rape of Karen, Jennifer was at home collecting her laundry to take to Alicia Carroll's house for washing

when she realized Newcomb was standing in her living room. The door to Jennifer's house had not been completely shut, but she did not invite Newcomb into her house; he just appeared without announcing himself.

Newcomb forced Jennifer to him and started kissing her neck, saying, "You know you want me." Jennifer resisted his advances and demanded that he leave. But he kept kissing her neck and told her, "Don't push me away. You know you want me." She again told him no.

Newcomb then started unfastening Jennifer's belt, but she re-fastened it. Newcomb loosened her belt again; and, at that point, Jennifer froze in fear. Newcomb then had intercourse with Jennifer on her couch, against her will. Jennifer testified that she did not scream or fight Newcomb because she was afraid and in shock. . . .

*Id.* at 70-71.

As Newcomb was seventeen years old at the time of the offenses, Newcomb was brought before a juvenile session of the Scott District Court. The Commonwealth filed a motion seeking to transfer Newcomb as a youthful offender to the circuit court to be tried as an adult pursuant to Kentucky Revised Statutes (KRS) 640.010. Following a hearing, the district court concluded that Newcomb should be transferred to circuit court and tried as an adult.

Thereafter, the Scott County Grand Jury indicted Newcomb upon two counts of first-degree rape, second-degree burglary, second-degree unlawful imprisonment, and intimidating a witness. The first jury trial ended in a mistrial due to a hung jury. But, in the second trial, the jury found Newcomb guilty upon

-3-

two counts of first-degree rape, criminal trespass, and intimidating a participant in legal process. The court sentenced Newcomb to a total of 25-years' imprisonment. Newcomb appealed his conviction and sentence of imprisonment. In *Newcomb v. Commonwealth*, 410 S.W.3d 63, the Supreme Court affirmed same.

In 2019, Newcomb filed an RCr 11.42 motion to vacate his sentence of imprisonment based upon ineffective assistance of counsel. The circuit court conducted an evidentiary hearing, and by Opinion entered January 30, 2020, the circuit court denied the RCr 11.42 motion. This appeal follows.

Newcomb contends that the circuit court erroneously denied his RCr 11.42 motion to vacate. Initially, Newcomb argues that his counsel at the transfer hearing in district court rendered ineffective assistance. Newcomb asserts that counsel was ineffective for failing to secure the testimony of an expert witness regarding juvenile sex offender treatment. Newcomb particularly points to the testimony of Dr. Edward Connor at the RCr 11.42 hearing:

> Most importantly to the juvenile court's decision to transfer in this case, Dr. Connor's testimony at the hearing made clear that there were, in fact, additional services that could have been offered to Stephon to continue his treatment in DJJ [Department of Juvenile Justice]. Furthermore, it was Dr Connor's opinion that "if he would have continued to be treated within DJJ, that treatment, combined with natural neurological development, would have led to a positive prognosis." In making that assessment, Dr. Connor stated that the adolescent brain is not fully developed until the mid-twenties and Stephon could have stayed in treatment to

receive services until he was twenty-one (21) years of age. Furthermore, Dr. Connor stated that this fact, in conjunction with the fact that Stephon suffered from mental illness and was in need of psychiatric care, meant that with four additional years of additional services he "would've had a much better prognosis" especially considering "DJJ generally does a very good job of treating our juveniles."

It was Dr. Connor's opinion that while DJJ had been very involved with Stephon, the problem was not that Stephon was not receiving attention. The problem arose from the fact that, in this case, Stephon received a lack of consistency in his treatment and this is why it was not effective. Dr. Connor believed that with the additional four years of treatment, with proper medication and consistent individual therapy it is very likely that Stephon could have been successfully treated within DJJ and for that reason it was Dr. Connor's opinion that "he was transferred prematurely."

Newcomb's Brief at 9-10 (citations omitted).

To prevail upon a claim of ineffective assistance of counsel, Newcomb must demonstrate that counsel's performance was deficient and that such deficiency resulted in prejudicial error. *Strickland v. Washington*, 466 U.S. 668 (1984); *Brown v. Commonwealth*, 253 S.W.3d 490, 498 (Ky. 2008). And, prejudice occurs where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

KRS 640.010 controls a transfer hearing held in district court to determine if a juvenile should be tried as an adult in circuit court. Thereunder, the

district court must determine if probable cause exists to believe that an offense had been committed, and if so, the court must then consider the following factors to decide if transfer to the circuit court is proper under KRS 640.010(2)(c):

> (c) If the District Court determines probable cause exists, the court shall consider the following factors before determining whether the child's case shall be transferred to the Circuit Court:
>
> 1. The seriousness of the alleged offense;
>
> 2. Whether the offense was against persons or property, with greater weight being given to offenses against persons;
>
> 3. The maturity of the child as determined by his environment;
>
> 4. The child's prior record;
>
> 5. The best interest of the child and community;
>
> 6. The prospects of adequate protection of the public;
>
> 7. The likelihood of reasonable rehabilitation of the child by the use of procedures, services, and facilities currently available to the juvenile justice system;
>
> 8. Evidence of a child's participation in a gang;
>
> 9. Whether the child is a defendant with a serious intellectual disability in accordance with KRS 532.130; and
>
> 10. Whether the child used a firearm in the commission of the offense.

In its January 30, 2020, Opinion, the circuit court determined that no prejudice resulted from any alleged error committed by counsel in the district court proceedings:

> A quick look at the *Strickland* test of deficient performance and prejudice shows that Defendant's counsel provided effective assistance at the Transfer Hearing. Skipping to the 2nd prong, prejudice, the weight of the evidence is very strong that the District Court could have found six of the eight factors in favor of Transfer just from the case file and the allegations in the complaint. The offense was very serious, a Rape 1st, and it was against a person. The Defendant was 17 years old at the time of the offense and he was then committed to DJJ as a Juvenile Sex Offender for a previous Rape lst [of his sister], so that it would be in the best interest of the public, and for the protection of the public, that the Defendant be Transferred as a Youthful Offender. The only factor in the Defendant's favor without any rebuttal would be there was no evidence he was in a gang. This evidence at Transfer could not be controverted or mitigated by an expert on one factor of eight, when six of the factors weighed so heavily against him. The Defendant can show no real prejudice to his case against Transfer, so under the *Strickland* test his grounds on ineffective assistance must fail.
>
> Defendant offered testimony at hearing in this 11.42 matter from an expert, Dr. Edward Conner, an expert on juvenile sex offender treatment, and also submitted as an exhibit a commitment review report presented by the Department of Juvenile Justice. Dr. Conner basically stated that the Defendant had not exhausted all treatment options at the time of the Transfer Hearing. This again, would not have been enough to overcome the District Court's findings on all the other factors that necessitated Transfer.

-7-

The DJJ commitment review report, of which the Defendant argues is very important to his case for ineffective assistance of counsel, when read in full, does not support the Defendant's claim that DJJ recommended further treatment. A look at the full report, which has to do with whether the juvenile should remain committed to DJJ (the only other option being release), shows that Defendant was in placement, receiving treatment, was released to the community, where he had some minor issues in school, and then received the charges for which he was transferred and ultimately found guilty. The report also states that while there may be treatment available for the juvenile at the time, DJJ could not perform those services because he had been taken into custody on a new Rape 1st charge, basically, that treatment was not available then for the Defendant because he had allegedly reoffended by committing another rape. This is not favorable to the Defendant at all. The Defendant's argument attempts to cherry-pick the treatment option out of four pages of bad facts against him when it is clear the current charges, and Defendant's history, and other factors made further treatment as a juvenile a poor option.

Given all of the factors weighing heavily against the Defendant at Transfer, when examined in the totality of circumstances, this Court cannot find that Defendant suffered any prejudice, nor that trial counsel made any error during the Transfer Hearing.

Scott Circuit Court Opinion at 3-5. We agree with the circuit court.

At the transfer hearing in district court, Stacy Heisler, a social services worker employed by the Department of Juvenile Justice (DJJ), testified that Newcomb had been previously committed to the DJJ in 2003. According to Heisler, Newcomb had raped his sister, bound her with duct tape, and threatened

her life. Heisler stated that Newcomb had completed the sexual offender treatment program. Heisler also believed that it was in the best interests of the community for Newcomb to be transferred to circuit court. Barbara Edwards also testified at the transfer hearing. She was employed as a juvenile services specialist with the DJJ. Edwards stated that if Newcomb was not transferred, he would stay in DJJ's custody and would repeat the sexual offender treatment program. Edwards also believed Newcomb should be transferred because she questioned whether Newcomb could be rehabilitated by participating in the same program again.

Even if counsel were deficient for failing to secure expert testimony at the transfer hearing and for failing to generally investigate, we conclude that such deficiency was not prejudicial. Considering the factors set forth in KRS 640.010 and the uncontradicted evidence at the hearing, we do not believe that a reasonable probability exists that the outcome of the hearing would have been different – that Newcomb would not have been transferred. Newcomb had previously raped his sister and had been committed to DJJ. While at DJJ, Newcomb completed sexual offender treatment program but still reoffended by committing two additional rapes. Simply stated, we cannot conclude that Newcomb's counsel at the transfer hearing rendered ineffective assistance.

Newcomb next asserts trial counsel rendered deficient and prejudicial performance during closing argument. Newcomb particularly argues:

[D]uring the second trial, Stephon's attorney, during closing arguments, commented on E.J.'s [victim] absence by remarking that E.J. was not present and asking, "What is their explanation for that?" That comment then permitted the Commonwealth to make the following damning remarks during its closing, "I'll tell you why E.J. is not here. It is because she's scared. And she's been threatened." The Commonwealth continued saying that the worst part about it "is that it corrupts the system . . . why isn't E.J. here? In all probably [sic] it is because she's been threatened and she is scared about what will happen if she comes down and testifies."

. . . .

Had counsel not opened the door and allowed the Commonwealth to directly argue to the jury that the reason E.J. had not appeared was that she was afraid of Stephon, there is a reasonable probability of a different result. This is because of the prejudicial effect of E.J.'s absence in light of the allegation of intimidation. In effect, E.J.'s absence combined with the Commonwealth's statement corroborated the intimidation charge, which then corroborated E.J.'s rape allegation, which corroborated A.P.'s rape allegation. The evidence of this fact is that, again this was the only change between the two trials, one of which resulted in a jury that could not come to a verdict, and one that resulted in a guilty verdict and twenty-five (25) years in prison.

Newcomb's Brief at 12-14 (citations omitted).

The circuit court viewed trial counsel's comments during closing argument as trial strategy. We agree that trial counsel is afforded discretion during closing argument and believe that even if trial counsel rendered deficient performance, such deficiency was not prejudicial. Considering the evidence at

-10-

trial, we are unable to conclude that the outcome of the trial would have been different absent the alleged deficient performance of trial counsel. Accordingly, we are of the opinion that the circuit court properly denied Newcomb's RCr 11.42 motion to vacate.

For the foregoing reasons, the opinion of the Scott Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kieran J. Comer
Assistant Public Advocate
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky
Frankfort, Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky